UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sheldon Peters Wolfchild et al.,

      Plaintiffs,

v.

                                  **MEMORANDUM OF LAW & ORDER**

Redwood County, et al.,              Civil No. 14-1597 (MJD/FLN)

      Defendants.

_____

Erick G. Kaardal and James V.F. Dickey, Mohrman, Kaardal & Erickson, P.A., Counsel for Plaintiffs.

Joseph F. Halloran, Mary B. Magnuson, Sara K. Van Norman, and Michael L. Murphy, Jacobson, Magnuson, Anderson & Halloran, P.C., and Jacobson Law Group, Counsel for Defendant Lower Sioux Indian Community in Minnesota.

Bradley N. Beisel and David J. Krco, Beisel & Dunlevy, P.A., Counsel for Defendants Dennis A. Auslam and Michelle D. Auslam, Lyle Black Living Trust, Scott A. Olafson and Kimberly A. Olafson, John H. Reynolds and Jeanne A. Reynolds, Allen J Kokesch and Jacalyn S. Kokesch, Prouty Properties, LLC, Thomas J. Heiling, Paul W. Schroeder and Karen J. Schroeder, John Hogan, Bruce Robert Black, Lila L. Black, Douglas Scherer and Brenda Scherer, Charles Case, Enid Guggisberg, et al., Marlene A. Platt Revocable Living Trust, William Schmidt and Norma Schmidt, Simmons Valley Trust, Willard Scherer and Eugenie Scherer, Henry G. O' Neil and Judith A. O' Neil, Lee H. Guggisberg Trust, Harold Guggisberg, Julie Anna Guggisberg, George F. Schottenbauer, Sandra Clarken, et al., Keefe Family Farm LLC, John C. Simmons and Mary J. Simmons, Neil and Donna Berger Family [Trust], TJ & CC Properties LLC, Sherman Acres, LLC, and Charles D. Neitzel; Robert G. Benner, Dunlap & Seeger, P.A., Co-Counsel for Defendant Kenneth Larsen.

Garth J. Unke and Louise A. Behrendt, Stich, Angell, Kreidler, Dodge & Unke and Richard A. Duncan, and Michelle E. Weinberg, Faegre Baker Daniels LLP, Counsel for Defendants Elmer C. Dahms and Barbara L. Dahms, Melvin W. Maddock and Kerry D. Maddock, Timothy Kerkoff and Theresa J. Kerkoff, Brent Prouty (Prouty Properties, LLC) Charles Case, Kim M. Cunningham and Mitchell H. Unruh.

Michelle Christensen, HKM Law Group, Counsel for Defendants Janie K. Crooks, Rockford L. Crooks, Eugene A. Engstrom, Alice Goelz, Francis Goelz, John Goelz, John Goelz III, Nancy S. Hansen, Patrick T. Hansen, Dawn R. Helmer, Steven R. Helmer, Cynthia Johnson, Allen J. Kokesch, Jacalyn S. Kokesch, Kelly M. Lipinski, Amy M. Lund, Chad M. Lund, Jon Lussenhop, Larry Lussenhop, and Michael R. Rasmussen.

Ken D. Schueler, Robert G. Benner and Jennifer M. Peterson, Dunlap & Seeger, P.A., Counsel for Defendants Julie Anna Guggisberg, Dale R. Hanna, Nancy Hanna, Robert D. and Lori A. Rebstock, Jon Lussenhop, John C. Simmons, and Mary J. Simmons, Lee H. Guggisberg Trust UWT, Scott A. Olafson and Kimberly A. Olafson.

Zachary W. Peterson, Richardson, Wyly, Wise, Sauck & Hieb, LLP, and Kevin A. Velasquez, Blethen, Gage & Krause, PLLP, Counsel for Defendant Edward J. Gaasch.

Jessica E. Schwie and Nicholas M. Matchen, Jardine Logan and O'Brien, PLLP, Counsel for Defendants Redwood County, Renville County, Sibley County, Paxton Township, Sherman Township, Honner Township, Birch Cooley Township and Moltke Township; Glen Jacobsen, Renville County, Co-Counsel for Defendant Renville County ("Municipal Defendants").

_____

## I.   Summary of Decision

In this case, Plaintiffs seek possessory rights and damages concerning a

twelve square mile area of land in southwestern Minnesota.  In order to obtain

such relief, Plaintiffs sought to eject an Indian Tribe from reservation lands and

seventy-five private landowners who, together with their ancestors, have

possessed the land at issue for over one hundred and fifty years.

Prior to bringing this action, Plaintiffs and their counsel, Erick Kaardal,

litigated related claims against the United States before the Court of Federal

Claims for over eleven years, which resulted in nine published opinions.  A

review of those nine opinions demonstrates the breadth and depth of the issues

that were actually litigated.  Those nine opinions also assist in demonstrating that

the claims asserted in this case are so completely frivolous and without a factual

or legal basis that they had to have been brought in bad faith.  As will be

discussed in detail below, such conduct warrants severe sanctions against both

Plaintiffs and their counsel.

Accordingly, the Court will grant Defendants' motions for sanctions and

order Plaintiffs and their counsel to pay Defendants their reasonable attorney's

fees and costs.  In addition, Plaintiffs shall post an appeal bond in the amount of

$200,000.

II.     **Background**

On May 20, 2014, Plaintiffs commenced this action seeking damages and

possession of certain lands on behalf of themselves and others similarly situated.

Plaintiffs claim to be the lineal descendants of a group of Mdewakanton Sioux

who assisted white settlers during the Sioux uprising in 1862, and whose conduct

was recognized by Congress in Section 9 of the Act of February 16, 1863 ("1863

Act".

> [T]he Secretary of the Interior is hereby authorized to set apart of the public
> lands, not otherwise appropriated, eighty acres in severalty to each
> individual of the before-named bands who exerted himself in rescuing the
> whites from the late massacre [by] said Indians.  The land so set apart . . .
> shall not be aliened or devised, except by the consent of the President of
> the United States, but shall be an inheritance to said Indians and their heirs
> forever.

1863 Act, 12 Stat. at 654.

Plaintiffs further allege that in 1865, the Secretary used his authority under

the 1863 Act to set aside a 12 square mile reservation for the loyal Sioux, and as a

result, Plaintiffs have the right to exclusive title, occupancy and use and the right

of quiet enjoyment to such 12 square mile reservation.  The named defendants in

this case are those individuals or entities that currently possess lands or hold

property rights to land within the 12 square mile reservation at issue.  Plaintiffs

4

allege the proposed class is believed to exceed 20,000 members.

Despite the fact that Plaintiffs' claims accrued approximately one hundred and fifty years ago, Plaintiffs asked the Court to eject the defendants from the land and to award Plaintiffs' trespass damages. In other words, Plaintiffs sought a remedy that would result in private landowners being dispossessed of lands and real property that they and their ancestors had owned for over a hundred years, an Indian tribe being dispossessed of reservation lands that are held in trust for the tribe by the United States, municipalities losing the ability to obtain reimbursement in the form of taxes and assessments for the building of roads and other improvements, and a church being forced to move from land that was transferred to the Reverend Henry Whipple, Episcopal Bishop, from Andrew Good Thunder for the sum of $1.00.

By Order dated March 5, 2015, this Court granted Defendants' motions to dismiss this action with prejudice. The Court found that not only did Plaintiffs fail to assert a claim for relief, but that the action had to be dismissed for the equitable reason that Plaintiffs had waited too long to bring an action with respect to the property at issue. In addition, the Court found that it had no subject matter jurisdiction to address the claims against the Lower Sioux Indian

Community (the "Community") as the Community was entitled to sovereign immunity against the claims asserted.  Plaintiffs have filed a notice of appeal to the Eighth Circuit Court of Appeals[1].

This matter is now before the Court on the Defendants' motions for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and this Court's inherent authority on the grounds that Plaintiffs and their counsel knowingly commenced and prosecuted this frivolous action on legal theories that are not supported by existing law or that involve a nonfrivolous argument for extending, modifying or reversing existing law or to establish new law.

The Defendants also move the Court to order Plaintiffs to post an appeal bond covering the costs of the appeal itself and the potential damages to be incurred by Defendants as a result of having the titles on their property clouded by the pending appeal.  Also before the Court is Plaintiffs' motion to take judicial

---

[1]Although a notice of appeal has been filed in this case, the Court retains jurisdiction to assess sanctions where the issue of sanctions is not before the court of appeals.  Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th Cir. 1998) (finding that where the issue of sanctions was not before the court of appeals when the notice of appeal was filed, the district court properly decided whether sanctions were appropriate); Murphy, 859 F. Supp.2d at 1019 (finding district court retained jurisdiction to impose sanctions, as sanctions are collateral to the merits of a claim and where issue of sanctions not before the court of appeals).  Here, the motions for sanctions are not before the Eighth Circuit, therefore this Court has jurisdiction to decide the motions for sanctions.

notice and the Municipal Defendant's motion to review taxation of costs.

## III.    Sanctions

### A.    Standard

Pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, when filing

a complaint, motion or other pleading, the attorney:

> certifies to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances:
> **(1)** it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions are warranted by
> existing law or by a nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new law;
> **(3)** the factual contentions have evidentiary support or, if specifically
> so identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery . . .

"If, after notice and a reasonable opportunity to respond, the court

determines that Rule 11(b) has been violated, the court may impose an

appropriate sanction on any attorney, law firm, or party that violated the rule or

is responsible for the violation.  Absent exceptional circumstances, a law firm

must be held jointly responsible for a violation committed by its partner,

associate, or employee."  Rule 11(c)(1).

Rule 11 further provides:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).

In determining whether an attorney has violated Rule 11(b), the Court must determine whether a reasonable and competent attorney would believe in the merit of the argument contained in the pleading.  Murphy v. Aurora Loan Serv., Inc., 859 F. Supp. 2d 1016, 1019 (D. Minn. 2012) aff'd and remanded, 518 F. App'x 511 (8th Cir. 2013) (citing Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003)). "Arguments for the extension, modification, or reversal of existing law do not violate Rule 11 if they are not frivolous under an objective standard."  Charland v. Little Six, Inc., 112 F. Supp. 2d 858, 861 (D. Minn. 2000).   Rule 11 is violated, however, "when a party invokes jurisdiction of the federal courts without justification."  Id. at 862.

When addressing a motion for sanctions, the Court should consider the factual basis for the filing, the legal issue of "whether a pleading is warranted by existing law or a good faith argument for changing the law" and whether an

appropriate sanction exists to deter the improper conduct.  <u>Murphy</u>, 859 F. Supp.

2d at 1020 (citing <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 399 (1990)).

In addition to the sanctions available pursuant to Rule 11, this Court

possesses the inherent authority to impose sanctions for bad faith conduct during

litigation.  <u>See</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 46 (1991).  "These powers

are 'governed not by rule or statute but by the control necessarily vested in courts

to manage their own affairs so as to achieve the orderly and expeditious

disposition of cases."  <u>Id.</u> (quoting <u>Link v. Wabash R. Co.</u>, 37 U.S. 626, 630-31

(1962)).

> Because of their very potency, inherent powers must be exercised with
> restraint and discretion.  A primary aspect of that discretion is the ability to
> fashion an appropriate sanction for conduct which abuses the judicial
> process.  As we recognized in <u>Roadway Express</u>, outright dismissal of a
> lawsuit, which we had upheld in <u>Link</u>, is a particularly severe sanction, yet
> is within the court's discretion.  Consequently, the "less severe sanction" of
> an assessment of attorney's fees is undoubtedly within a court's inherent
> power as well.

<u>Id.</u> at 44-45.

Pursuant to its inherent authority, the Court "may assess attorney's fees

when a party 'has acted in bad-faith, vexatiously, wantonly or for oppressive

reasons.'"  <u>Id.</u> (citation omitted).

In addition, federal law provides:

9

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927.

### B.    Safe Harbor Requirements

To comply with Rule 11(c)(2), a motion for sanctions must describe the specific conduct that violates Rule 11(b), must be served pursuant to Fed. R. Civ. P. 5 and must not be filed with the court if the challenged paper, claim, defense, contention or denial is withdrawn or corrected within 21 days after service.

With respect to the motions before it, the record demonstrates that the Community sent a letter to Plaintiffs, shortly after this action was commenced, detailing the Community's position as to the frivolous nature of the claims alleged in the Complaint, and providing notice that a motion for sanctions would be filed if the action was not withdrawn.  (Halloran Aff. Ex. 1.)  Specifically, the Community asserted that Plaintiffs' complaint: failed to state a claim for relief; failed to join a necessary and indispensable party; the claims were barred by res judicata and collateral estoppel; and lack of jurisdiction based on sovereign immunity.  After filing the Amended Complaint, additional correspondence was

sent to Plaintiffs informing them of the Community's position that the Amended

Complaint did not cure any of the defects previously identified.  (Id. Ex. 3.)

Finally, on November 25, 2014, the Community sent Plaintiffs a copy of the

Community's motion for sanctions.  (Id. Ex. 4.)  In the accompanying letter, the

Community pointed out that Plaintiffs had 21 days from the date of the letter to

withdraw the asserted claims against the Community, and that if the Amended

Complaint was not withdrawn, the Community would file the motion for

sanctions with the Court.  (Id.)

By letter dated November 21, 2014, the Landowner Defendants also

notified Plaintiffs of their position that this action is wholly unfounded in law

and fact, and that if the action was not withdrawn 21 days from the date of the

letter, that they would file a motion for sanctions.  (Schueler Aff., Ex. 1.)

Attached to the letter was a motion for sanctions.  (Id.)  In the motion, the

Defendant Landowners asserted that Plaintiffs' claims were frivolous as they had

failed to join an indispensable party, Plaintiffs' lacked standing, the claims were

time-barred and that the 1863 Act provided no private right of action.

On February 16, 2015, the Municipal Defendants served Plaintiffs with a

motion for sanctions.  (Schwie Decl. ¶ 2; Ex. A [Doc. No. 241].)  The 21 day safe

11

harbor period to withdraw the Amended Complaint expired on March 9, 2015.

(Id. ¶ 3.)  However, the Court granted Defendants' motions and dismissed the

action before the 21 day safe harbor period expired.

Plaintiffs assert that the Defendants' Rule 11 motions must be denied as

Defendants did not comply with the safe harbor requirements set forth in Rule

11(c)(2).  It is Plaintiffs' position that the 21 day safe harbor period does not begin

to run until the moving party serves a motion and supporting memorandum of

law upon the offending party, citing to Local Rule 7.1(c)(1).  Plaintiffs argue this

position is supported by the Eighth Circuit's decision in Gordon v. Unifund CCR

Partners, 345 F.3d 1028, 1029 (8th Cir. 2003).

This is an incorrect interpretation of the Gordon decision.  The Eighth

Circuit did not hold in Gordon that Rule 11's safe harbor provision requires that a

motion for sanctions must be served pursuant to the forum court's local rules for

civil motion practice.  In fact, there is no language in the Gordon decision

discussing the district court's local rules.   Instead, the Eighth Circuit

acknowledged the reference to Federal Rules of Civil Procedure 5 when it held

that a motion for sanctions should be served pursuant to federal service

requirements.  Id. 345 F.3d at 1029.  Rule 5 does not include the filing

requirement that a motion be filed with a memorandum of law, nor does it

require a party to comply with local rules that govern service and filing of

documents.

The purpose of the safe harbor provision is to provide the offending party

notice of the alleged improper pleading, and the opportunity to withdraw the

challenged pleading and escape sanctions.  Barber v. Miller, 146 F.3d 707 (9th Cir.

1998).  Other courts have found that the purposes of the safe harbor provision are

met when the motion served provides notice of the grounds for Rule 11

sanctions, even though the motion does not include supporting papers such as a

memorandum of law and exhibits.  See e.g., Star Mark Mgmt, Inc. v. Koon Chun

Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 176 (2d Cir. 2012).

> [W]hile motions usually are accompanied by a memorandum of law and
> exhibits, the issue here is not whether Koon Chun satisfied the district
> court's local rules or a judge's individual practices, but whether it satisfied
> Rule 11's safe harbor provision.  Indeed, the district court accepted the
> motion.  Moreover, under the federal rules, a motion need only: "(A) be in
> writing unless made during a hearing or trial; (B) state with particularity
> the grounds for seeking the order; and (C) state the relief sought." Fed. R.
> Civ. P. 7(b)(1).  A "motion" can take different forms, and it is distinct from
> a memorandum of law or affidavit. The drafters of the rule surely
> understood this distinction when crafting the safe harbor requirement.

Id.

The Court finds that the Community and the Landowner Defendants

complied with the safe harbor procedural requirements of Rule 11.  The same is not true with respect to the Municipal Defendants.  The Municipal Defendants did not serve its proposed Rule 11 motion until February 16, 2015; the safe harbor period expiring on March 9, 2015.   On March 5, 2015, however, the Court dismissed the action with prejudice.  Because the safe harbor requirements were not met with respect to the Municipal Defendants's Rule 11 motion, the Municipal Defendants are not entitled to sanctions pursuant to Rule 11.

The Court can nonetheless entertain the Municipal Defendants' motion for sanctions under the Court's inherent authority, or under 28 U.S.C. § 1927.  See VanDanacker v. Main Motor Sales Co., 109 F. Supp.2d 1045, 1046 (D. Minn. 2000); Chambers, 501 U.S. at 50 (finding that there is "nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct").

### C.    Merits of Sanction Motions

#### 1.    The Community's Motion for Sanctions

The Community argues that sanctions are appropriate in this case because Plaintiffs were well aware that there was no legal basis for filing this action

against any of the defendants, and in particular the Community.  Prior to

commencing this action, Plaintiffs and their counsel, Erick Kaardal of Mohrman,

Kaardal & Erickson, P.A., had been involved in related litigation before the Court

of Federal Claims ("CFC") for over eleven years.  In that action, Plaintiffs brought

claims against the United States pursuant to the Indian Tucker Act, 28 U.S.C. §

1505.  Ultimately, the Federal Circuit Court of Appeals rejected all of Plaintiffs'

claims.  See Wolfchild et al. v. United States, 731 F.3d 1280 (Fed. Cir. 2013)

(Wolfchild IX) petition for cert. denied 134 S. Ct. 1516 (Mar. 10, 2014).

The Plaintiffs had advanced multiple and conflicting arguments in the

prior litigation based on facts that are also at issue here.  For example, one

overlapping issue was whether the Secretary of the Interior set aside and/or

conveyed 80 acres of land to the loyal Mdewakanton under the 1863 Act.

Regardless of the merits of Plaintiffs' claim in this action, the Community

asserts that the law is clear that it is immune from suit based on its inherent

sovereign authority.  See Oklahoma Tax Comm'n v. Citizen Bank Potawatomia

Tribe of Okla., 498 U.S. 505, 509 (1991).  Indian tribes possess "common-law

immunity from suit traditionally enjoyed by sovereign powers."  Michigan v. Bay

Mills Indian Community, 134 S. Ct. 2024 (2014).  The Community asserts that

many courts, including the undersigned, have recognized and reaffirmed its sovereign status as a federally recognized Indian tribe.  <u>See</u>, <u>e.g.</u>, <u>In re Whitaker</u>, 474 B.R. 687, 690 (8th Cir. BAP 2012) ("As a federally recognized Indian tribe [the Lower Sioux Indian Community] enjoys sovereign immunity."); <u>Lower Sioux Indian Community v. United States</u>, 163 Ct. Cl. 329, 335 (1963); <u>Maxam v. Lower Sioux Indian Community</u>, 829 F. Supp. 277, 281 (D. Minn. 1993).

In light of this well-settled law, the Community asserts that Plaintiffs acted in bad faith and with reckless disregard for the law, when they asserted their possessory land claims against the Community.  The Community further argues that any reasonably competent attorney, even after a cursory review of the law, would have concluded that the Community was immune from this suit.  Also, a reasonably competent attorney would know that a complaint had to plead some basis for the Court's jurisdiction.  After receiving the Community's letter which pointed out its sovereign status, Plaintiffs filed an Amended Complaint that only generally pleaded jurisdiction.  By failing to provide evidence to support the Court's jurisdiction, and by ignoring the well-settled doctrine of tribal immunity, the Plaintiffs and their attorney violated Rule 11(b)(2) and (3).

Plaintiffs assert that the law is not settled as to whether the Community is

immune from suit.  In support, Plaintiffs claim that the CFC in the previous

action analyzed the Community's sovereign immunity claims and found no such

immunity, citing to Wolfchild v. United States, 72 Fed. Cl. 511, 539 (2006)

(Wolfchild IV).

Plaintiffs have again put forth an incorrect interpretation of a published

court decision.  At issue in Wolfchild IV was whether the CFC could issue

summonses to the Prairie Island and Shakopee Mdewakanton Communities

under 41 U.S.C. § 114(b).  Section 114(b) provides:

> (b) Procedure. The United States Court of Federal Claims, on motion of
> either of the parties, or on its own motion, may summon any and all
> persons with legal capacity to be sued to appear as a party or parties in any
> suit or proceeding of any nature whatsoever pending in said court to assert
> and defend their interests, if any, in such suits or proceedings, within such
> period of time prior to judgment as the United States Court of Federal
> Claims shall prescribe.

In their attempt to obtain a share of the casino revenues for those casinos

operated by the Communities, the plaintiffs sought the summonses given the

Communities interests in such revenues.  The government opposed the motion,

arguing that § 114(b) could not be used to bring third parties into an action.  The

CFC disagreed, finding that joining the Communities was appropriate under §

114(b) because such joinder would promote judicial economy and would aid

17

resolution of the accounting that was requested because the Communities were

acting as agents for the federal government in administering the trust.  The CFC

further recognized that participation by the Communities under § 114(b) was

subject to limitations, as the plaintiffs could only pursue damages against the

United States.  Wolfchild IV, 72 Fed. Cl. at 535.

The government also opposed the issuance of summonses on the basis that

the Communities enjoyed sovereign immunity and were therefore not subject to

being summoned.  The district court noted that tribal sovereign immunity applies

to an Indian tribal entity that is recognized by the federal government, and when

the Communities were organized under the Indian Reorganization Act of 1934,

they were not considered "tribes."  Wolfchild IV, 72 Fed. Cl. at 536.  The district

court addressed a number of historical documents which seemed to indicate that

the Communities were not recognized as tribes, but also noted that in 1969, the

Communities were added to the list of Indian Entities Recognized and Eligible to

Receiver Services maintained by the BIA.  Id. at 537.  The court also recognized

that "[t]he listed entities 'are acknowledged to have the immunities and

privileges available to other federally acknowledged Indian tribes.'"  Id. (quoting

68 Fed. Reg. at 68180).  The court then assumed, without deciding, that the

Communities possessed some sort of sovereign immunity.  Id.

As applied to the motion for summonses, however, the court held that

because the Communities were acting as agents of the federal government by

controlling and administering the trust properties, they were not acting in a

sovereign capacity and thus not entitled to sovereign immunity with respect to

the summonses.  Id. at 538.  Thus, contrary to Plaintiffs' assertions, the Court of

Federal Claims did not hold that the Community did not enjoy any sort of

sovereign immunity.

Plaintiffs cite to a footnote in which the district court commented on

arguments put forward by Amici that certain amendments to the Indian

Reorganization Act ("IRA") ensured that the Communities would receive the

benefits incidental to tribal sovereign immunity.  Id. at 537 n.30.  The district

court found such amendments vague and ambiguous, but declined to resolve the

issue based on its decision to assume without deciding that the Communities

enjoyed sovereign immunity.  Id.  The Court finds that Plaintiffs' reliance on this

footnote for their position that the Community did not enjoy sovereign immunity

is disingenuous, in light of the prevailing authority to the contrary.

The Court finds that a reasonable and competent attorney would have

recognized that, given the well settled law that the Community was entitled to sovereign immunity, the Court did not have subject matter jurisdiction over asserted claims against the Community.  Thus, by bringing this action against the Community, the Court finds that Plaintiffs violated Rule 11(b)(1).

Even if the Court had subject matter jurisdiction over the claims asserted against the Community, the Court finds that such claims are frivolous and without a factual or legal basis.  In addition, a portion of the land at issue is located within the Community's reservation, and that land is held in trust for the Community by the United States.  A reasonable and competent attorney, in particular one who had been involved in the related litigation for over eleven years, would know that the United States held title to such land, not the Community, and as a result, the United States was an indispensable party with respect to Plaintiffs' claims for damages and ejectment.

Accordingly, the Court finds that Plaintiffs and their counsel acted in bad faith and with reckless disregard for the law when it pursued this action against the Community.

### 2.     Landowners' and Municipal Defendants Motion for Sanctions

Private landowner defendants Robert and Lori Rebstock, Jon Lussenhop,

Dale and Nancy Hanna, John and Mary Simmons, Julie Guggisberg, Lee

Guggisberg Trust, Scott and Kimberly Olafson and Kenneth Larsen ("Landowner

Defendants") and the Municipal Defendants move for sanctions against Plaintiffs

and their attorneys for bringing frivolous claims against them.

In support of their motion for sanctions, the Landowner Defendants argue

that by defending against a frivolous lawsuit, they have suffered substantial

hardship.  They have had to deal with the enormous stress of having a federal

lawsuit pending against them and of not knowing whether their homes and land

would be taken away.  This action has also clouded titles to their land, making it

impossible to conduct any transactions involving their land.  For example,

Kenneth Larsen had an easement application denied as a result of this action.

(Larsen Aff. Ex. 1.)  Had the easement been granted, Larsen would have been

entitled to a payment of approximately $95,000.  The Landowner Defendants

have also suffered the hardship in the form of attorneys' fees and expenses.

The Municipal Defendants assert they suffered additional and unique

burdens in having to accommodate, comply with and adduce voluminous public

records in response to data practices requests and for their own defense.

As to the merits of the claims asserted against these defendants, in the

prior litigation, the district court held that the plaintiffs' claims against the United States grounded in the 1863 Act were without merit.  Wolfchild et al. v. United States, 101 Fed. Cl. 54, 76 (2011).  The Federal Circuit affirmed, finding that the 1863 Act did not impose a money mandating duty upon the United States, and that even if the Secretary had set apart the land under the Act, the claim was untimely.  Wolfchild IX, 731 F.3d at 1292-93.

Although the claims at issue here are directed to those individuals and entities that are in possession of the lands at issue, rather than the United States, the claims are also without merit.  First, as this Court held in its March 5, 2015 Order, there is no private right of action under the 1863 Act.  But even if there were such a right of action, it is abundantly clear that the land was sold no later than 1895, id. at 1293, and that a reasonable and competent attorney would know that claims raised over one hundred years later would be equitably barred.

In opposition to the motions for sanctions, Plaintiffs raise a number of arguments including that courts are hesitant to issue sanctions in cases involving race discrimination.  Plaintiffs argue this case involves white hostility towards Native Americans.  The fact that a claim involves allegations of race discrimination does not provide a party or counsel leave to litigate such claim in

bad faith, or without a legal or factual basis.

Plaintiffs also argue that sanctions are not warranted because the Court dismissed the Amended Complaint - not for failure to state a claim - but upon the affirmative defenses of sovereign immunity, no private action and laches. Plaintiffs argue that because the Rules of Civil Procedure put the burden on Defendants to plead affirmative defenses, the Rule 11 certification as to the Amended Complaint is not at issue.  This argument is not persuasive.

Rule 11 requires a party to consider whether any obvious affirmative defenses bar the case.  FDIC v. Calhoun, 34 F.3d 1291, 1299 (5th Cir. 1994) (citing White v. Gen. Motors Corp., 908 F.2d 675, 682 (10th Cir. 1990) cert. denied, 498 U.S. 1069 (1991)); see also Friedler v. Equitable Life Assur. Soc'y of United States, 86 F. App'x 50, 56 (6th Cir. 2003) (finding that Rule 11 imposes duty upon counsel to research applicable statute of limitations period prior to filing complaint).

Accordingly, the Court finds that Plaintiffs acted in bad faith and with reckless disregard for the law when it pursued this action against the Defendants.

### 3.    Appropriate Sanction

The Court must now determine the appropriate sanction.  The sanction imposed "must be limited to what suffices to deter repetition of the conduct or

comparable conduct by others similarly situated." Id.  The option of sanctions to

be imposed include both monetary and non-monetary penalties, up to and

including dismissal of the complaint with prejudice.  Brown v. Ameriprise Fin.

Servs., Inc., 276 F.R.D. 599, 606 (D. Minn. 2011).

The Advisory Committee Notes to Rule 11 provide the following criteria

for determining whether and what kind of sanction is appropriate.

> Whether the improper conduct was willful, or negligent; whether it was
> part of a pattern of activity, or an isolated event; whether it infected the
> entire pleading, or only one particular count or defense; whether the
> person has engaged in similar conduct in other litigation; whether it was
> intended to injure; what effect it had on the litigation process in time or
> expense; whether the responsible person is trained in the law; what
> amount, given the financial resources of the responsible person, is needed
> to deter that person from repetition in the same case, what amount is
> needed to deter similar activity by other litigants.

The Defendants argue that monetary sanctions against Plaintiffs and their

counsel is warranted as their improper conduct was willful and part of a pattern

of activity that included over ten years of related litigation in the Court of Federal

Claims.  Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980).  The previous

litigation demonstrates that this case is not the product of naivety, ignorance or

negligence, and that Plaintiffs and their attorneys acted in bad faith.  The

Defendants further argue a monetary sanction is necessary to prevent similar

24

conduct in the future and to protect the due and orderly administration of justice and maintain the authority and dignity of the courts.

Rule 11 provides that sanctions shall be limited to what is sufficient to deter repetition of the conduct at issue. "Deterring frivolous litigation is an important goal; it is valued highly by the judiciary and by the attorneys practicing before it." Charland, 112 F. Supp.2d at 867 (citation omitted). Rule 11 also provides that sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

The Court finds that Plaintiffs and their counsel brought this action in bad faith. After eleven years of unsuccessful litigation in the Court of Federal Claims, it should have been clear that this action had no basis in fact or law. In addition, the Court finds that in response to the motions for sanctions, Plaintiffs' counsel continued to engage in vexatious and wanton conduct by asserting frivolous legal arguments and misrepresenting the law.

As the matter has been dismissed, the Court finds that a monetary sanction in the form of reasonable attorney's fees and costs is necessary in order to deter Plaintiffs and their counsel from engaging in frivolous litigation in the future.

The Defendants shall submit to the Court, within thirty days from the date of this Order, itemized billings statements for such fees and costs, to allow the Court to determine an appropriate sanction.

## IV.    Defendants' Motions for Appeal Bond

The Defendants move, pursuant to Fed. R. App. P. 7, for a Court order requiring Plaintiffs to post an appeal bond sufficient to protect Defendants from any costs incurred because of an unsuccessful appeal.  Rule 7 provides: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."   The term "costs" as used in this Rule include "all costs properly awardable in an action."  In re Gen. Elec. Co. Sec. Litig. 998 F. Supp.2d 145, 151 (S.D.N.Y. 2014) (citing Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998)).  The district court has the discretion to determine whether to order an appellant to post an appeal bond.  Id.

As to the amount of the bond, Defendants estimate that the costs associated with the generation and reproduction of the record, preparation of briefs and other costs will be at least $25,000.  (Schueler Aff. ¶ 2.)  This estimate is reasonable, given the fact that there are 84 named Defendants, twenty-seven

attorneys and a docket that currently lists 270 docket entries.  See In re Uponor,

Inc. F1807 Plumbing Fittings Prod. Liab. Litig., Civ. No. 11-MD-2247, 2012 WL

3984542 at *2 (D. Minn. Sept. 11, 2012).

Defendants further assert that pursuant to Fed. R. App. P 38 an appeal

bond can include damages, and single or double costs to the appellees, for filing a

frivolous appeal.  In re General Elec. Co. Sec. Litig., 998 F. Supp. 2d at 151 (citing

Adsani, 139 F.3d at 73).  Defendants assert that damages have been incurred by

certain Landowner Defendants because the titles to their land have been clouded

by this litigation.   As discussed above, landowner Kenneth Larsen applied to the

Board of Water and Soil Resources for an easement on his property.  The

application was denied "due to the property lying within the area being

contested under lawsuit being pursued by the decedents of the Dakota Indians."

(Larsen Aff., Ex. 1 [Doc. No. 203].)  Larsen learned that the Board had been

advised by an attorney that the title insurance would not insure the integrity of

the easement if the lawsuit was successful.  The Board further informed him that

it did not want to risk spending money on an easement without the assurances of

permanency.  (Id.)  The easement payment Larsen would have received would

have totaled $95,308.58.  (Id.)  Landowner Defendant Gary Guggisberg has also

submitted documentation as to the costs he has incurred as a result of this

litigation.  (Guggisberg Aff. ¶ 2 (noting that he had to purchase owner's title

insurance prior to selling property, at a cost of $2,603.50).)  Defendants assert that

the total amount of damages cannot be determined exactly, but that potential

damages could range from $175,000 to $1,000,000.  (Schueler Aff. ¶¶ 4, 5.)

Defendants ask the Court to order Plaintiffs' to post an appeal bond in the

amount of $200,000 to cover both costs of appeal and damages.

In determining whether an appeal bond is warranted, the Court should

consider the following factors: "(1) the appellant's financial ability to post a bond,

(2) the risk that the appellant would not pay appellee's costs if the appeal loses,

(3) the merits of the appeal, and (4) whether the appellant has shown any bad

faith or vexatious conduct."  In re Uponor, Inc., Civ. No. 11-MD-2247, 2012 WL

3984542 at *2 (citing Berry v. Deutsche Bank Trust Co. Americas, 632 F. Supp. 2d

300, 307 (S.D.N.Y. 2009)).

The Court finds that the above factors all weigh in favor of a cost bond in

this case.  Defendants point out that the Plaintiffs are financially able to post a

bond in this case, given the fact that they have already participated in twelve

years of litigation in the case before the Court of Federal Claims, and now have

the funds available to appeal this Court's decision dismissing this action.

Defendants further assert they are concerned that Plaintiffs have yet to suffer any

repercussions in the form of sanctions or otherwise, arising from their frivolous

litigation, heightening the risk that Plaintiffs will not pay costs if they lose on

appeal.

In response, Plaintiffs have submitted the declaration of Tom Smith, who,

speaking on behalf of Plaintiffs, assert that they do not have the financial ability

to post a bond in the amount of $200,000, and their ability to post a bond in any

amount is limited.  (T. Smith Decl.)  Smith asserts they could post a bond in the

amount of $505 which reflects costs associated with filing an appellate brief.

There are multiple plaintiffs named in the complaint.  The Court thus finds

the costs of the appeal bond can be shared by the Plaintiffs "which alleviates the

financial burden and increases the ability of the [Plaintiffs] to post the bond."  In

re Uponor, Inc., 2012 WL 3984542 at *2.

Finally, as discussed above, the Plaintiffs brought this action even though

it had no basis in the fact or law.  The Court dismissed the Amended Complaint

on multiple grounds, therefore the Court finds there can be little merit to

Plaintiffs' appeal and that such appeal was brought in bad faith.  The Court will

grant the motion for bond pursuant to Fed. R. App. P. 7 in the amount of

$200,000.

## V.     Plaintiffs' Motion for Court to Take Judicial Notice

Plaintiffs move the Court to take judicial notice of the Community's

Corporate Charter ("Charter"), attached as Exhibit A to the declaration of Erick

Kaardal.  The Charter provides:

> The Community, subject to any restrictions contained in the Constitution
> and laws of the United States, or in the Constitution and By-Laws of the
> said community, shall have the following corporate powers, in addition to
> all powers already conferred or guaranteed by its constitution and by-laws:
>
> * * *
>
>> (I) To sue and to be sued in courts of competent jurisdiction within
>> the United States; but the grant or exercise of such power to sue and
>> to be sued shall not be deemed a consent by the Community or by the
>> United States to the levy of any judgment, lien or attachment upon
>> the property of the Community other than income or chattels
>> specially pledged or assigned.

Plaintiffs claim that through a chance review of the Library of Congress

records relating to the Community on April 11, 2015, they discovered the Charter.

Plaintiffs assert the above provision, in which the Community agrees "to sue and

to be sued" is a very important document and relevant to the Court's sovereign

immunity determination.  Similar charters were located for the Prairie Island

Indian Community.  (Kaardal Decl, Ex. B.)  Plaintiffs assert that Defendants failed

to disclose the Charter in their motion to dismiss.  The Community has

demonstrated, however, that the Charter was not concealed from Plaintiffs, as it is

easily obtainable through an internet search.

Plaintiffs next assert that in the previous action, the court granted motions

for judicial notice for a number of documents. (See Kaardal Decl., Exs. C. D and

E.)  Plaintiffs further note that in granting the Defendants' motions to dismiss, this

Court considered matters of public record outside the four corners of the

Amended Complaint.  Plaintiffs argue that the Court made the decision to dismiss

on an incomplete record, because a document relevant to the Court's

determination as to sovereign immunity, the Charter, was not before it.  Further, it

is Plaintiffs' position that the Charter would have completely altered the Court's

analysis of the issue.

The Rules of Evidence 201 provides that a court can take judicial notice of

the following:

> **(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not
> a legislative fact.
> **(b) Kinds of Facts That May Be Judicially Noticed.** The court may
> judicially notice a fact that is not subject to reasonable dispute because it:
>> **(1)** is generally known within the trial court's territorial jurisdiction; or
>> **(2)** can be accurately and readily determined from sources whose
>> accuracy cannot reasonably be questioned.
> **(c) Taking Notice.** The court:

      **(1)** may take judicial notice on its own; or
      **(2)** must take judicial notice if a party requests it and the court is
      supplied with the necessary information.

**(d) Timing.** The court may take judicial notice at any stage of the proceeding.

**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

**(f) Instructing the Jury.** In a civil case, the court must instruct the jury to accept the noticed fact as conclusive. In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.

The Court will not take judicial notice of the Charter because it is clearly subject to dispute so far as whether the "sue or be sued" provision waives the Community's sovereign immunity.  See Lustgraaf v. Behrens, 619 F.3d 867, 885 (8th Cir. 2010) (finding district court abused its discretion by taking judicial notice of a document that was subject to a reasonable dispute).  Rather than support Plaintiffs' position, federal law allows the Community to form business corporations, and that the formulation of such a corporation does not affect the power of the tribe to act in a governmental capacity.  United Keetoowah Bank of Cherokee Indians v. State of Okl. ex rel. Moss, 927 F.2d 1170, 1174 (10th Cir. 1991). Further, the law provides that the "sue and be sued" clause in the Community's corporate charter does not operate as a general waiver of the its immunity from suit.  See Rosebud Sioux Tribe v. Val-U Const. Co. of S.D., Inc., 50 F.3d 560, 563

(8th Cir. 1995).

## VI.   Motion for Review of Taxation of Costs

Following the Court's Order dismissing this matter, the Municipal

Defendants filed their Bill of Costs with the Clerk of Court, seeking $305.25 in

printing costs for making courtesy copies of pleadings for the Court and

$37,635.40 in exemplification[2] costs, incurred in procuring and preparing the

public record for use by the Court.  The Clerk awarded the Municipal Defendants

their printing costs and $93.30 of their exemplification expenses.  The Clerk

denied the exemplification fees to the extent they represented attorney's fees

incurred in preparing the public record for the Court.

The Municipal Defendants now move this Court for an award of

exemplification expenses pursuant to 28 U.S.C. § 1920(4) in the amount of

$37,542.50.

The Municipal Defendants argue that they are entitled to reimbursement of

all exemplification fees incurred, as they were necessary for the Court to rule on

the motions to dismiss.  Such fees were incurred by attorneys reviewing the public

record of their meeting minutes for 150 years, who identified the portions relating

---

[2]Exemplification fees are defined as the "official transcript of a public record,
authenticated as a true copy for use as evidence."  Black's Law Dictionary 692 (10th ed. 2014).

to the land at issue, prepared the documents to be presented to the Court as evidence and authenticated the same as a true and correct copy of the original public record.  They argue that such fees are taxable even if incurred by attorneys.  See Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996) (finding that exemplification costs are reasonable out-of-pocket expenses normally charged to clients by attorneys).  The Municipal Defendants argue that while the professional expenses incurred by them in collecting, organizing and otherwise amassing the public records were borne in the form of attorney's fees, this was solely because the collection of records required the expertise of an attorney.  See Appliance Inv. Co. v. Western Elec. Co., 61 F.2d 752, 756-57 (2d Cir. 1932) (finding that costs for the preparation of drawings to simplify patents for use at trial were recoverable, as such costs were not a mere matter of convenience and there was no claim of bad faith or wastefulness in connection with such costs).

The Municipal Defendants note that the Clerk of Court deemed the costs spent on a title company was taxable.  Here, however, the title company's expertise was limited and did not include the knowledge required to properly identify and copy the relevant documents at issue, which was an understanding of the nature, type, manner of location of public records relating to notice, land

use proceedings, hearings, recordings of objections, formation of rights of way, erection of public buildings, regulation of economy and taxation.

Plaintiffs object to the Bill of Costs submitted by the Municipal Defendants, as they seek reimbursement for attorney's fees, and that such fees are not recoverable under 28 U.S.C. § 1920.

The Court finds that as the Municipal Defendants are entitled to recover their attorney's fees as a sanction in this matter, the Court need not decide whether the attorney's fees sought by this motion are taxable as exemplification fees. Accordingly, this motion will be dismissed as moot.

IT IS HEREBY ORDERED:

1.  Defendants' Motions for Sanctions [Doc Nos. 200, 206 and 239] are GRANTED. Plaintiffs and their counsel, Erick Kaardal, Mohrman, Kaardal & Erickson, P.A. shall pay to the Defendants, as a sanction, Defendants' reasonable attorney's fees incurred in defending this action. Within thirty days from the date of this Order, Defendants shall submit a detailed accounting of the attorney's fees incurred. Plaintiffs shall submit their objections, if any, to the amount of fees within thirty days from the date Defendants file their accounting.

2.      Defendants' Motions for an Appeal Bond [Doc. Nos. 215, 223, 224, 225, 235, 247 and 252] is GRANTED.  Plaintiffs shall post a bond, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, in the amount of $200,000.

3.      Plaintiffs' Motion for the Court to Take Judicial Review [Doc No. 261] is DENIED.

4.      Municipal Defendants' Motion for Review of Taxation of Costs [Doc. No. 283] is DISMISSED WITHOUT PREJUDICE.

Date:   June 9, 2015

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court